IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–02193–KMT

MICHAEL ARNOLD,

    Plaintiff,

v.

DEAN GONZALEZ,
NADIA GATCHELL, and
WASHINGTON COUNTY SHERIFF JON STIVERS,

    Defendants.

## ORDER

This matter is before the court on the following motions:

1.     "CDOC Parole Officer Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 37 [Parole Officers' Mot.], filed February 1, 2019), to which Plaintiff responded (Doc. No. 42 [Resp. Parole Officers' Mot.], filed February 22, 2019) and the Parole Officers replied (Doc. No. 45 [Parole Officers' Reply], filed March 5, 2019); and

2.     "Defendant Washington County Sheriff John Stivers' Motion to Dismiss Second Amended Complaint (Doc. # 36)" (Doc. No. 38 [Stivers' Mot. Dismiss], filed February 5, 2019), to which Plaintiff responded (Doc. No. 44 [Resp. Stivers' Mot.], filed February 26, 2019) and Defendant Stivers replied (Doc. No. 46 [Stivers' Reply], filed March 12, 2019).

**STATEMENT OF THE CASE**

Plaintiff states that Defendant Dean Gonzalez was his Parole Officer in Sptember 2016; Defendant Nadia Gatchell was his Parole Officer in October 2016, during Plaintiff's detention in the Washington County Jail from October 19, 2016, through December 21, 2016, and after his release from the Washington County Jail; and Defendant John Stivers, is the Washington County Sheriff who operated the Washington County Jail from October 19, 2016 to December 21, 2016. (Doc. No. 36 [Second Am. Compl.], ¶¶ 2–4.)

In the first week of September 2016, Plaintiff injured his right foot and was seen at Lutheran Medical Hospital and scheduled to return for casting of the foot. (*Id.*, ¶ 6.) Before the casting, Plaintiff alleges he was "subjected by Defendant Gonzales to a short term detention pursuant to the Sure and Swift Program of the Colorado Department of Corrections" ("CDOC"). (*Id.*, ¶ 7.) The Sure and Swift Program allows a detention of one to five days as a sanction for minor violations of parole rules. (*Id.*) Plaintiff alleges he advised Defendant Gonzalez of his pending appointment for the cast placement, and Defendant Gonzalez promised to arrange for Plaintiff to be released for the appointment. (*Id.*, ¶ 8.) Despite this promise, Plaintiff alleges Defendant Gonzalez failed to make arrangements for Plaintiff to attend the appointment. (*Id.*)

Upon his release, Plaintiff went to the Lutheran Medical Center and obtained another appointment for the cast placement. (*Id.*) Plaintiff then went to check in with Defendant Gonzalez, who again placed Plaintiff in the Denver County Jail pursuant to the Sure and Swift Program. (*Id.*) Again, Plaintiff alleges Defendant Gonzalez promised and yet failed to arrange for Plaintiff to attend the rescheduled cast placement appointment. (*Id.*, ¶ 9.)

When Plaintiff was released from the second Sure and Swift incarceration, Plaintiff was assigned a new Parole Officer, Defendant Gatchell. (*Id.*, ¶ 10.) Plaintiff alleges that, during his first visit with Defendant Gatchell, she falsely accused Plaintiff of missing an appearance and changing his address without permission. (*Id.*) Defendant Gatchell arrested Plaintiff, placed him in jail, charged him with a parole violation, and commenced a proceeding for a 90-day turnaround. (*Id.*) Plaintiff was sent to the Washington County Jail on October 19, 2016. (*Id.*, ¶ 11.)

Plaintiff alleges the medical unit of the Washington County Jail learned from Plaintiff's intake evaluation that he had a serious medical need which required specialized care and that the delay in treatment caused him severe discomfort and progressive worsening of his condition. (*Id.*, ¶ 14.) Plaintiff alleges that, despite this knowledge, the Washington County Jail refused to arrange for medical treatment, other than providing Tylenol. (*Id.*, ¶ 12.) Plaintiff submitted grievances, and the responses to the grievances advised Plaintiff that Defendant Stivers had a policy that prevented the Washington County Jail staff from providing care for injuries suffered to detainees prior to becoming inmates at the jail. (*Id.*, ¶ 15.)

Plaintiff states he was in the Washington County Jail for 55 days, and when he was released, he again met with Defendant Gatchell at Plaintiff's aunt's home. (*Id.*, ¶¶ 17–18.) Plaintiff alleges Defendant Gatchell again arrested him on a false charge and placed him in the Denver County Jail. (*Id.*, ¶ 18.) Plaintiff states Defendant Gatchell again instituted a 90-day turnaround proceeding, and Plaintiff spent 30 days at the Douglas County Jail and 60 days at the Cheyenne Mountain Re-entry Center. (*Id.*) Plaintiff states Defendant Gatchell failed to arrange for care for his foot during this time. (*Id.*, ¶ 20.)

Plaintiff sues the defendants in only their individual capacities, asserting one claim for cruel and unusual punishment, seeking actual and punitive damages. (*See id.*, ¶ 5; at 7.) Defendants move to dismiss the claims in their entirety. (*See* Parole Officers' Mot.; Stivers' Mot.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to

determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

**ANALYSIS**

*A.     Judicial Notice of Documents*

At the outset, the court notes that Defendant Stivers urges the court to take judicial notice of several exhibits attached to his Motion to Dismiss. (Stivers' Mot. at 6, n.1; 7–9.) First, Defendant Stivers attaches a medical agreement signed by Plaintiff upon his arrival at the Washington County Jail. (Stivers' Mot. at 5–6, Ex. A.) Defendant Stivers claims this is a a "governmental document[]" of which the court may take judicial notice. (*Id.* at 6, n.1.) A court can take judicial notice of government documents or records of prior litigation under Federal Rule of Evidence 201, as long as the litigation is directly or closely related to the case at hand. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not

obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."). The medical agreement is not a government document from prior litigation. Thus, the court declines to take judicial notice of the medical agreement.

Second, Defendant Stivers attaches Washington County Sheriff's Office Policies 701 and 702. (Mot. at 6–7, Exs. B & C.) The court can, and will, take judicial notice of agency rules and regulations. *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (citing *Roemer v. Bd. of Pub. Works of Md.*, 426 U.S. 736, 742 n.4 (1976)).

Third, Defendant Stivers attaches Plaintiff's grievances and responses to the grievances, which he contends are referenced in and central to the Second Amended Complaint. (Mot. at 8–9, Exs. D–L.) In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). In his Second Amended Complaint, Plaintiff alleges that, "[i]n response to his kites and grievances requesting specialized care Plaintiff was told that it was the policy of the Washington County Jail under the direction of Sheriff Jon Stivers not to provide care for injuries suffered by detainees before becoming an inmate." (Second Am. Compl., ¶ 15.) The grievances and responses thereto attached to Defendant Stivers' Motion are referred to in the Second Amended Complaint and are central to Plaintiff's claim against Defendant Stivers that he promulgated a policy that prevented Plaintiff from getting medical treatment for his ankle injury. Moreover, in Plaintiff's response to Defendant Stivers' Motion, Plaintiff does not dispute the

documents' authenticity.  (*See* Resp. Stivers' Mot. at 4–7.)  Accordingly, to the extent necessary, the court will take judicial notice of Exhibits D and J attached to Defendant Stivers' Motion.

Finally, Defendant Stivers attaches various medical records and Plaintiff's Release Report from the Washington County Jail.  (Stiver' Mot., Exs. E–I, K, L.)  These documents are not incorporated into the Second Amended Complaint by reference, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.2009), and the court will not consider them.

### B.     *Qualified Immunity*

Qualified immunity is an affirmative defense against § 1983 damage claims available to public officials sued in their individual capacities.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known.  *Id.*  As government officials at the time the alleged wrongful acts occurred, being sued in their individual capacities, the defendants are entitled to invoke a qualified immunity defense to Plaintiff's claims.  *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials—entitled to assert a qualified immunity defense").  In resolving a motion to dismiss based on qualified immunity, a court looks at: "[1] whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and [2] whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted).  Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part.  *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).

7

Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

Defendants argue that are entitled to qualified immunity from liability. (*See* Parole Officers' Mot. 3–7; Stivers' Mot. at 9–10.) Defendant Stivers argues that Plaintiff fails to satisfy either part of the qualified immunity test, while Defendants Gonzalez and Gatchell's argument focuses on whether the right at issue was clearly established.

### 1. *Violation of Constitutional Right*

Plaintiff alleges Defendant Stivers "established or approved" of a policy "not to provide medical care for injuries to inmates [that] occurred prior to their detention in the Washington County Jail." (Second Am. Compl., ¶ 4.) Plaintiff also alleges he "was told that it was the policy of the Washington County Jail under the direction of Sheriff Jon Stivers not to provide care for injuries suffered by detainees before becoming an inmate." (*Id.*, ¶ 16.)

Defendant Stivers argues that Plaintiff fails to state a claim for deliberate indifference.[1] (Stivers' Mot. at 8–9.) Specifically, Defendant Stivers argues that Plaintiff fails to state an

---

[1] Plaintiff asserts his deliberate indifference claim under both the Eighth and Fourteenth Amendments. (Compl., ¶¶ 24, 27.) Defendant argues that Plaintiff's deliberate indifference claim should be analyzed under the Fourteenth Amendment, rather than the Eighth Amendment, because Plaintiff was a pretrial detainee. (Stivers' Mot. at 4-5.) Once an individual has been found guilty of the crime, parole violation, or probation violation, whether by plea or trial, the individual is no longer a pretrial detainee, even if he or she has not yet been sentenced. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990). *See Kellum v. Bernalillo Cnty.*, 250 F. Supp. 3d 846, 852-55 (D.N.M. 2017) (discussing the difference between a pretrial detainee and an incarcerated person and holding that the plaintiff, who was remanded to the custody of a detention center as part of her total punishment and as an automatic sanction for her probation violation, was an inmate rather than a pretrial detainee). Plaintiff's status at the time of the events in question is unclear; nevertheless, Plaintiff's status is largely irrelevant for the

8

actionable claim against him arising from Washington County Jail's medical care policies.² (*Id.* at 4–7.)

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173). The court's analysis of Plaintiff's Eighth Amendment claims involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Id.* at 837. "A medical need is [sufficiently] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would

---

analysis of his federal claim, because the standard for a denial of medical care is the same for both pretrial detainees and incarcerated persons.

² Defendant Stivers also argues that, despite Plaintiff's allegations to the contrary, Plaintiff was provided with medical care and treatment while he was incarcerated in the Washington County Jail. (*Id.* at 8-9.) The court need not address this argument, however, because Plaintiff does not allege that Defendant Stivers was personally involved in his care, and, as explained *infra*, Plaintiff fails to state a claim related to his allegations that Defendant Stivers promulgated a policy that violated Plaintiff's constitutional rights.

easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (internal quotations omitted).

Plaintiff may only establish liability against a defendant supervisor pursuant to section 1983 by demonstrating: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy; (2) the policy caused the complained of constitutional harm; and (3) the defendant acted with the state of mind required to establish the alleged constitutional deprivation." *Myers v. Koopman*, No. 09–cv–02802–REB–MEH, 2011 WL 650328, at *11 (D. Colo. Feb. 11, 2011) (citing *Dodds*, 614 F.3d at 1199–1200).

Defendant Stivers attaches to his Motion to Dismiss the Washington County Jail's medical care policies. (Stiver's Mot., Exs. B–C.) Policy 702, "Availability and Standards of Care," contains the following key provisions:

> "Inmates may request health care at any time by completing and submitting the appropriate request form." (Mot., Ex. B, § 702.3(b).)
>
> "Inmates may question or complain about their care or denial of care through the grievance system." (*Id.*, § 702.3(d).)
>
> "Inmates may be treated by a personal licensed physician . . . at their own expense, with the approval of the Health Care Adviser." (*Id.*, § 702.3(e).
>
> "Costs, including those related to security procedures, will not be used as justification for withholding necessary or emergency medical care." (*Id.*, § 702.3(f).)

Policy 701, "Inmate Screening and Evaluations," "recognizes that inmates should be screened when they initially arrive at the detention facility and evaluated at regular intervals so all inmates receive adequate health care." (Mot., Ex. C, § 701.2.) This policy applies to inmates transferred from another facility, such as Plaintiff. *Id*. Pursuant to Policy 701, staff "perform a health care screening on each inmate upon his/her arrival at the detention facility," and the screening

10

includes observations of body deformities, body movements, and skin injuries. (*Id*., §§ 701.2 and 701.4.) Staff are required to record their intake screening findings "on the appropriate form." (*Id*., § 701.4.) A healthcare provider reviews a transferred inmate's health record within 12 hours of that inmate's arrival. (*Id*., § 701.5.) Additionally, within fourteen days of arrival, inmates receive an in-person health evaluation, including review of the initial screening information and a medical examination. (*Id*., § 701.6.) The examining provider is required to report any findings that may significantly impact the inmate's health, safety, or welfare to the Captain or the Captain's designee. (*Id*.) Importantly, neither Policy 701 nor 702 contains a provision that *prevents* an inmate from receiving medical care for injuries that occurred prior to their detention at the Washington County Jail. Thus, the allegations in Plaintiff's Second Amended Complaint that Defendant Stivers promulgated a policy that prevented Plaintiff from getting medical treatment for his ankle injury are belied by the policies themselves.

In his response, Plaintiff concedes that Defendant Stivers "may have promulgated the policies regarding medical care . . . [but] he chose not to enforce them." (Resp. Stiver's Mot. at 2.) However, this allegation is entirely different from the allegations in Plaintiff's Second Amended Complaint that Defendant Stivers "established or approved" of a policy "not to provide medical care for injuries to inmates [that] occurred prior to their detention in the Washington County Jail." (Second Am. Compl., ¶ 4.) Plaintiff also asserts that it was deliberate indifference for Plaintiff to have been told that he would have to pay for an evaluation by an orthopedic surgeon. (*Id.*) Plaintiff's Second Amended Complaint is devoid of any allegation, however, that the policy requiring an inmate to pay for costs of medical care for pre-existing injuries constitutes deliberate indifference. Plaintiff cannot amend his pleading by adding factual

11

allegations or new claims in his responsive brief. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted); *Wilson v. Jenks*, No. 12–cv–02495–RM–KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014).

Plaintiff also argues in his response that Defendant Stivers should be held liable because, "despite [g]rievances describing the deficiencies of the care," he "delegated the duty to decide what care to provide the detainees to his designees, the medical staff" instead of "immediately arrang[ing] for an orthopedic appointment."[3] (Resp. Stiver's Mot. at 2, 6–7.) To the extent Plaintiff now seeks to hold Defendant Stivers liable for the conduct of the medical staff, whom Plaintiff now claims ignored the policies that required treatment, a plaintiff "cannot establish liability under § 1983 merely by showing that the defendant was in charge of others who may have committed a constitutional violation. Instead, the plaintiff must establish a 'deliberate,

---

[3] Plaintiff also argues that Defendant Stiver's "policy of allowing medical staff to make [ ] decisions . . . made it a municipal policy . . . ." (Resp. Stiver's Mot. at 7.) In support of this argument, Plaintiff cites *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The *Pembaur* Court held that when a municipal official who is "responsible for establishing final policy with respect to the subject matter in question" makes "a deliberate choice to follow a course of action . . . from among various alternatives," municipal liability will attach to that decision. *Id.* at 483-84. "[A]cts of municipal department officials in their official capacity are equated with the acts of a municipality itself." *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) (citing *Brandon v. Holt*, 469 U.S. 464, 472 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978). However, as the court noted previously, Plaintiff has not asserted any official-capacity claims, and thus this argument fails.

intentional act by the supervisor to violate constitutional rights.' " *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195). Plaintiff has failed to do so.

Finally, to the extent Plaintiff seeks to hold Defendant Stivers liable because he responded to the following grievance made by Plaintiff on December 1, 2016:

> i [sic] have been here with a fractured foot for 6 weeks now walking around on it with no medical treatment other than being told i [sic] am on the list to be seen. I [sic] have been on this fake list for 6 weeks now and my foot is just getting worse now to where the bone is starting to push out the back of my foot[.] i [sic] am in bad pain and only getting tylonol [sic]. my [sic] remidy [sic] is get me to the doctor immidiatly [sic] and get me medical attention and stronger medication. my [sic] foot is getting worse by the day and I will be dissabled [sic] because of this facility. i [sic] am starting a lawsuit as this is my 3rd grievance on this matter.

(Stiver's Mot., Ex. J at 7.) Defendant Stivers responded as follows on December 7, 2016:[4]

> You have an appointment with an orthopedic specialist but we are unable to tell the date of the appointment for security reasons. This is a pre[-]existing injury that you had upon your arrival to Washington county and you will be responsible for all costs regarding your injury.

(*Id.*) The Tenth Circuit addressed a very similar issue in *Phillips*, where an inmate had surgery to repair a fractured fibula in his right leg before he was transferred to a state prison. 508 F. App'x at 739. During surgery, a syndesmotic screw was inserted, and the orthopedic surgeon subsequently recommended removal of the screw within a month after surgery. *Id.* Following surgery, the inmate was transferred to a state prison. *Id.* During his two-month stay at the prison, the inmate "mounted a vociferous, sometimes strident, and ongoing campaign to have the syndesmotic screw removed from his ankle." *Id.* at 739–40. He submitted kites and grievances

---

[4] Defendant states that, "[u]pon information and belief, the 'Stivers' who responded to [Plaintiff's] grievances, is not Defendant Sheriff Stivers." (Stivers' Reply at 3.) Nevertheless, Defendant Stivers argues that, even if he did respond, Plaintiff fails to state a claim against him. (*Id.*) The court will assume, for purposes of this Motion, that Defendant Stivers did respond to the grievance.

to various prison officials, including the prison warden. *Id.* at 740. In a grievance response, the prison warden informed the inmate that "[medical staff] is evaluating your case. You will hear soon." *Id.* at 744. In affirming dismissal of the claim against the warden, the Tenth Circuit stated that "[m]erely sending grievances to a warden is not enough to attach liability, and the warden's response signified nothing more than a reasonable reliance on the judgment of prison medical staff." *Id.*

Here, as in *Phillips*, Defendant Stivers reasonably relied on the judgment of the jail medical staff. *See also Arocho v. Nafziger*, 367 F. App'x 942, 956 (10th Cir. 2010) (affirming dismissal of claim against prison warden that arose from a grievance denial regarding Hepatitis C treatment because reasonable reliance on the judgment of medical professionals "negates rather than supports liability" and the medical staff had tested the inmate, recommended treatment, and was waiting for approval).

Plaintiff has failed to state a claim that Defendant Stivers committed a deliberate, intentional act to violate his constitutional rights. *Phillips*, 508 F. App'x at 744; *Dodds*, 614 F.3d at 1200. Moreover, Plaintiff has failed to state a claim that Defendant Stivers "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" that prevented Plaintiff from obtaining medical treatment for his ankle injury. *Dodds*, 614 F.3d at 1199. Accordingly, Plaintiff's claims against Defendant Stivers are dismissed, and he is entitled to qualified immunity. *Leverington*, 643 F.3d at 732; *Dodds*, 614 F.3d at 1191.[5]

---

[5] In his Motion, Defendant Stivers also argues that Plaintiff has failed to state a claim a common law and contractual duty to provide medical care and that the Colorado Governmental Immunity Act bars such a claim. (Stivers' Mot. at 10-13.) Plaintiff does not respond to this argument, and the court does not construe such a claim in the Second Amended Complaint. Thus, the court need not address this argument.

## 2. *Clearly Established Right*

Plaintiff alleges Defendant Gonzalez, "knowing of a serious medical need twice failed to arrange for Plaintiff to attend two appointments to have the foot treated by Delphi Orthopedics." (Second Am. Compl., ¶ 11.) Plaintiff alleges Defendant Gatchell, "[u]pon taking over the parole supervision of Plaintiff[,] . . . was informed of Plaintiff's injury and that because of two Sure and Swift program [detentions,] his foot had not been treated. Defendant Gatchell had the opportunity to provide release for Plaintiff to obtain treatment." (*Id.*) Plaintiff contends "Defendants Gonzalez and Gatchell are primarily liable for the failure to treat Plaintiff's foot." (*Id.*, ¶ 13.)

Defendants Gonzalez and Gatchell assert that Plaintiff has failed to meet his burden of showing that the constitutional right at issue was clearly established. (Parole Officers' Mot. at 3–7.) To assess whether a right has been "clearly established" for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

> A constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent. *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011). This precedent cannot define the right at a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, the precedent must be particularized to the facts. *White v. Pauly*, –– U.S. ––, 137 S. Ct. 548, 552 (2017) (per curiam). But even when such a precedent exists, subsequent Tenth Circuit cases may conflict with or clarify the earlier precedent, rendering the law unclear. *See Lane v. Franks*, [573 U.S. 228, 244–45] (2014).
>
> A precedent is often particularized when it involves materially similar facts. *See White*, 137 S. Ct. at 552. But the precedent may be adequately particularized even if the facts differ, for general precedents may clearly establish the law when the defendant's conduct " 'obvious[ly]' " violates the law. *See id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). Thus, a right is clearly

15

> established when a precedent involves " '*materially similar conduct*' " or applies
> " 'with *obvious clarity*' " to the conduct at issue. *Estate of Reat v. Rodriguez*, 824
> F.3d 960, 964–65 (10th Cir. 2016) (emphasis in *Estate of Reat*) (quoting *Buck v.
> City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008)), *cert. denied*, ─── U.S.
> ───, 137 S.Ct. 1434 (2017) (Mem.).
>
> By requiring precedents involving materially similar conduct or obvious
> applicability, we allow personal liability for public officials only when our
> precedent puts the constitutional violation " 'beyond debate.' " *White*, 137 S. Ct.
> at 551 (quoting *Mullenix v. Luna*, ─── U.S. ───, 136 S.Ct. 305, 308 (2015) (per
> curiam)). Thus, qualified immunity protects all officials except those who are
> " 'plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting
> *Mullenix*, 136 S.Ct. at 308).

*Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017), *cert. denied*, 139 S. Ct. 5 (2018).

Though it is clearly established that a *prison official* can be liable for deliberate indifference to an inmate's serious medical needs, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (discussing this liability in the context of prison guards and prison medical staff), Defendants Gonzalez and Gatchell argue there is no clearly established law that a *parole officer* has a duty to arrange medical care for an inmate housed in a correctional facility after that individual's arrest for a parole violation. (Probation Officers' Mot. at 5.) Indeed, this court was not able to find Tenth Circuit precedent indicating that a parole officer can be liable for deliberate indifference to an inmate's serious medical needs.

Plaintiff argues in response that his claim is not that Defendants Gonzalez and Gatchell were expected "to arrange or pay for the medical care. They just needed to arrange for [Plaintiff] to be released on time to attend the appointment which would be paid by Plaintiff." (Resp. Probation Offices' Mot. at 3–4.) Regardless, Plaintiff fails to cite any Tenth Circuit precedent holding that a parole officer must arrange for an inmate to be released from custody to attend a previously-scheduled medical appointment, and the court's independent research does not reveal

16

any legal support for any such duty under these circumstances. *But cf. Andrade v. Christ*, No. CIV.A. 08–cv–01649–WYD–KMT, 2009 WL 2848984, at *11 (D. Colo. Sept. 1, 2009) (The law is not clearly established as to whether a parole officer has an Eighth Amendment duty to arrange for medical care for an offender placed in a halfway house.).

Thus, because Plaintiff has failed to meet his burden of establishing that Defendants Gonzalez and Gatchell have violated clearly established law, *Dodds*, 614 F.3d at 1191, the claims against them are dismissed, and they are entitled to qualified immunity.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that the "CDOC Parole Officer Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 37) and "Defendant Washington County Sheriff John Stivers' Motion to Dismiss Second Amended Complaint (Doc. # 36)" (Doc. No. 38) are **GRANTED** and the claims against the defendants are dismissed with prejudice for failure to state a claim. It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff on all claims for relief and causes of action asserted in this case. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and C.COLO.LCivR 54.1.

Dated this 10th day of September, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge